JAMES S. McCARTHY, TRUSTEE, ET AL., (ESTATE OF MARGARET H. McCARTHY) *vs.* WILLIAM L. TIERNEY, TRUSTEE, ET ALS.

Third Judicial District, Bridgeport, April Term, 1931.
MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 21st—decided June 9th, 1931.

*Harrison Hewitt,* with whom was *William B. Gumbart,* and, on the brief, *Mary E. Manchester,* for the defendants.

*Walter J. Walsh,* for the plaintiffs.

HAINES, J. The will of the testatrix, Margaret H. McCarthy of Greenwich, was executed January 9th, 1929, and her decease followed two days afterward. A copy of Item III of the will is printed in the footnote arranged and paragraphed as it appears of record.

Item III. I give and bequeath to William L. Tierney of Greenwich, Connecticut, and James S. McCarthy, my husband of said Greenwich the sum of two million dollars ($2,000,000) to be held by said William L. Tierney and said James S. McCarthy in trust for my son James S. McCarthy, Junior, on the following terms:

(a) Said trustees shall have full power and authority to invest and reinvest said sum upon such terms and conditions as said trustees in their judgment may see fit as fully as an absolute owner, all statutory limitations now in force or hereafter enacted as to the investment of trust funds being hereby expressly waived.

The trustees shall be the sole and absolute judges as to what may be income or principal, and any distribution they may make shall be final and without appeal.

The trustees shall be entitled hereunder, in full compensation for their services, six per cent (6%) of the gross income derived from the trust fund, and upon final distribution thereof one and one-half per cent (1½%) of the value of the principal so distributed.

The trustees shall not be liable for the act or default of any agent properly selected by them in the transaction of the business of the trust, but shall be answerable only for their own default or miscarriage.

(b) My trustees shall pay to my son, James S. McCarthy, Junior, as may be most convenient to the said trustees and at least semi-annually, the net income from the trust during the term of his natural life, subject to the terms hereof.

(c) In the event of any pledge, assignment, legal process or attempt at alienation, voluntary or involuntary, of any of the rights under this Item III, or in the event of any attempt by any creditor, or other person or persons to subject the said income or principal to any claim or demand whatsoever, my said trustees, or their successors in trust, shall have the right to terminate any and all payments or applications hereunder, and are hereby authorized to retain the said income, allowing the same to accumulate and be added to the principal for distribution, as hereinafter provided.

But the trustees in their sole discretion may apply the said income for the support, maintenance or education of my said son, and in event that he shall be in need by reason of age, sickness or untoward circumstances, the trustees shall be empowered and shall have full authority to use any part of the principal for the support, maintenance or education of my son, should the exigencies of the

The plaintiff and defendant are the co-trustees mentioned in the first paragraph of Item III and have qualified as such, and James S. McCarthy, the surviving husband of the testatrix, has been duly appointed by the Court of Probate of Greenwich and has qualified as the guardian of the minor son, James S. McCarthy, Jr., who was about three and one half years of age when this action was brought, and was and is living with his father, the plaintiff herein. All the questions we are asked to consider arise under the provisions of Item III of the will and are as follows: First: Whether by said Item III, the discretion is vested in the trustees, either during the minority of said James S. McCarthy, Jr., or during the whole period of the trust, as to the amount of income to be expended for the maintenance, education and support of the said minor? (a) If there be such discretion, should the trustees during the minority of the said James S. McCarthy, Jr., expend the amount of income deemed proper by the trustees, or by the Court of Probate for the district of Greenwich or should they pay the total net income over to the guardian of said James S. McCarthy, Jr., for such purposes? Second:

situation seem to require it, but it is my hope that the fund may outlast the life of my said son, but, if necessary, that it should be used for his comfort in so far as necessity may seem to appear to my said trustees.

(d) Upon the death of my son, James S. McCarthy, Junior, leaving issue, the principal of said trust fund shall be divided among such issue per stirpes. Should he die without issue but leaving a widow, I give and bequeath to such widow one-half ($\frac{1}{2}$) of the income thereon, for her life, and the remaining half of such income to be paid to my husband James S. McCarthy. Upon the death of the widow, the principal of said trust fund, with all increment thereof, shall be assigned and delivered in whatever form it may be to my said husband James S. McCarthy. Should my said son die without leaving a widow and without issue then the principal shall immediately be paid to my said husband, James S. McCarthy, his heirs, representatives and assigns.

If any part of the income of said trust fund is not so expended during any year, how should such surplus be handled by the trustees? Shall they retain it and apply it in their discretion from time to time during the period of the trust for the support, maintenance and the education of said James S. McCarthy, Jr., who is a life beneficiary of the trust, or if not, when and to whom shall such surplus be paid? Third: If there is no discretion vested in the trustees as to the amount of the income to be expended for the support, maintenance and education of said James S. McCarthy, Jr., to whom is such income to be paid and under whose direction is it to be expended, and by whom shall any surplus be accumulated and to whom and when shall such surplus be paid?

By stipulation filed since the case came to this court, the parties agree that there is not, nor has there been, any pledge, assignment, legal process or attempt of alienation, voluntary or involuntary, of any of the rights of James S. McCarthy, Jr., under Item III, and there has been no attempt by any creditor or other person or persons to subject the said income or principal to any claim or demand whatsoever.

The first paragraph of Item III is clear, concise and unequivocal, creating a trust fund of two million dollars for the son of the testatrix, James S. McCarthy, Jr., and in itself, furnishes no problem of interpretation. Subsection (a) of this paragraph deals solely with the trustees as such, defining their powers as regards the investment and re-investment of the fund, making their decision final as to what shall be considered principal and what income, and providing that any distribution they may make is likewise to be final and not subject to appeal. It further provides in detail for their compensation and that they shall not be liable for any act or default of any properly se-

lected agent employed by them in the administration of the trust. Subsection (b) then makes explicit disposition of the net income of the fund, requiring them to deliver it to the beneficiary James S. McCarthy, Jr., for the term of his life, paying it at their convenience but not less frequently than semiannually, and all subject to the terms of the will. These are found in two more subsections of Item III, viz., (c) and (d). It is at once apparent that subsection (d) provides for the distribution of the income and principal of the fund after the termination of the trust by the death of James S. McCarthy, Jr., and that none of the questions now presented to us are raised by the provisions of this subsection. The source of the questions we are asked to consider is to be found in subsection (c). This is in two paragraphs, the first giving the trustees the right under certain circumstances, to terminate the payments of income to the beneficiary and retain and accumulate it and add it to the principal for later distribution as therein provided. These circumstances are specified to be, "in the event of any pledge, assignment, legal process or attempt at alienation, voluntary or involuntary, of any of the rights under this Item III, or in the event of any attempt by any creditor, or other person or persons to subject the said income or principal to any claim or demand whatsoever." The stipulation above referred to shows that the contingencies provided for in the quoted passage have not arisen. In the nature of things it is not improbable that they never will arise. Coming now to the second paragraph of subsection (c), we find the provisions which have given rise to the questions under consideration. The language is repetitious, confused and ambiguous. Being placed in the will as a part of this subsection (c), the natural inference is that it was intended to be read in connection with

the first paragraph of that subsection, and the plaintiff so contends, but upon careful reading and analysis it seems, except in the first two lines, to have no natural relation to the subject-matter of the first paragraph. Paragraphs and punctuation in a will are largely matters under the control of the scrivener, and while they are not to be disregarded, they are not to be allowed to obscure the real intent of a testator sufficiently otherwise indicated. *McDermott* v. *Scully*, 91 Conn. 45, 51-53, 98 Atl. 350. We think the real intent of the testatrix can only be found by reading the first two lines of the second paragraph as part of the first paragraph. *Cunningham* v. *Cunningham*, 72 Conn. 253, 256, 43 Atl. 1046. The confusion arises from the improper paragraphing of the will. It will be seen that the possible occurrences mentioned in the first paragraph are prefaced with the words "In the event," which suggests a contingency, giving rise upon its happening, to the right of the trustees to suspend the payment of the net income to the beneficiary provided in subsection (b). Inevitably this would have suggested to the testatrix that the beneficiary would be left without any provision, hence the immediate use of the words "But the trustees in their sole discretion may apply the said income for the support, maintenance or education of my said son." We are satisfied that the testatrix thus intended to give the trustees sole discretion to accumulate the income and add it to the principal or to themselves apply it to the support, maintenance and education of the beneficiary, one or both, upon the happening of a specified contingency which decided the trustees to discontinue the semiannual payments required of them under subsection (b).

The thought of the testatrix then turned, apparently, to the possibility that, during his life, the bene-

ficiary might need more than the net income of this fund which she had provided for him, hence she says that in the event that this need arises by reason of age, sickness or untoward circumstances, the trustees shall have the right to use both income and principal of the fund to meet this need, or the need of support, maintenance, or education, "should the exigencies of the situation seem to require it." Having thus sought to protect her son against contingencies, the testatrix expresses the hope that the fund may outlast his life, but if these necessities arise "it should be used for his comfort in so far as necessity may seem to appear to my said trustees."

We are satisfied that this interpretation does no violence to the language used, and that the testatrix's intent thus disclosed is a reasonable and natural one for a mother whose solicitude for the welfare of the son is obvious from the whole will. It is a well known rule of testamentary interpretation that where the intention of a testator is expressed in an ambiguous or obscure manner, such a construction should be adopted, if consistent with other testamentary rules, as will dispose of the property in a just, natural and reasonable manner. *Willcox* v. *Beecher,* 27 Conn. 134, 139; *Tingier* v. *Woodruff,* 84 Conn. 684, 688, 81 Atl. 967; 40 Cyc. p. 1411, and cases cited.

It follows from the conclusion thus reached, that only upon the cessation of the semiannual payments of income provided by subsection (c) have the trustees discretion as to the use of the income of the fund. The payments of semiannual net income "to my son" which is made mandatory by subsection (b), leaves the application and expenditure of the money where the mother would naturally wish it to be, in the hands of the father and guardian during the minority of the son, and in the son's hands thereafter. When it thus

reaches their hands, the money ceases to be a part of the trust fund and becomes the property of the son. The use of the same by the guardian for the benefit of the son during minority, and the conservation of any surplus in his hands, is required of the guardian under the law of his appointment, and with this in the present action, we have nothing to do.

In view of these conclusions, we answer the questions as follows: To the first question we answer, No. The trustees have no discretion at any time during the trust as to the amount of income to be paid James S. McCarthy, Jr., or his guardian, unless a contingency specified in subsection (c) should arise. The second question requires no answer. To the third question we answer that the income is to be paid to the guardian during the minority of the son, and thereafter to the son direct, as his property.

No costs shall be taxed to either party in this court.

In this opinion the other judges concurred.