LOUIS R. HERSHATTER ET AL. v. THE COLONIAL TRUST COMPANY, TRUSTEE (ESTATE OF BENJAMIN EPSTEIN), ET AL.

BROWN, JENNINGS, BALDWIN, INGLIS AND O'SULLIVAN, Js.

Argued February 14—decided April 18, 1950.

*Charles M. Lyman,* for the appellants (plaintiffs).

*William W. Gager,* for the appellee (named defend-ant).

*Charles A. Harrison,* with whom, on the brief, was

*Milton G. Harrison,* for the appellees (defendants Gopsztejn et al.).

*Jonathan F. Ells,* pro se, the appellee (defendant guardian ad litem for undetermined beneficiaries and heirs).

*Leonard L. Levy* appeared, and *Herman M. Levy* and *William L. Hadden* filed a brief, in behalf of the appellee (defendant Kopstein).

O'SULLIVAN, J. This litigation resulted from an order of distribution entered in a testamentary estate by the Court of Probate for the district of Winchester. The ascertainment of the distributees required an interpretation of the will. The order ran adversely to the plaintiffs, who have taken successive appeals, first to the Superior Court, which confirmed the action of the Court of Probate, and now to this court. The facts are not in dispute.

Benjamin Epstein came to this country from Russia. He settled in Winsted, where he lived for some fifty years until his death on December 27, 1943. He left a will, executed in 1931, of which the sixth paragraph is before us for interpretation. It reads as follows: "Sixth,—I give and bequeath to my aunt, Ida Hershatter, wife of Bonny Hershatter, now of West Haven, Conn., the income from the sum of Twenty Five Thousand Dollars, for and during her natural life, with the right to dispose of $10,000 of said sum by her will, but if she makes no other provision, said sum to be equally divided among her children upon her death."

Epstein had a brother and sister who were born in Russia after he left and whom he never saw. These two, together with a niece, also of Russia, are the prin-

cipal objects of his bounty as manifested by a trust of the residue, amounting to approximately $900,000, which they receive as remaindermen at the end of five years. His nearest relative in this country was Ida Hershatter, an aunt of the half blood. She had three sons and a daughter, and these children are the plaintiffs herein. Although the Hershatter family lived in and around New Haven and Epstein in Winsted, there was a frequent exchange of visits between them over the years. Epstein was a very reticent man and secretive about his own business affairs. His confidants were few in number, but one of them was Louis, the eldest son of Mrs. Hershatter. Two days before Epstein died, he called Louis on the telephone to arrange for an appointment to discuss private matters. The three other Hershatter children were well known to him and he often did kind things for them.

In 1931, the year in which his will was executed, Mrs. Hershatter was in financial difficulties, a condition which prevailed until her death on April 7, 1947. Epstein knew of these circumstances and was wont to make gifts of money to help her out. He was likewise aware of the special concern she had for her only daughter, about whose welfare she was continually worrying. Mrs. Hershatter died leaving a will and an estate whose value did not exceed $1000. In her will she exercised the power of appointment conferred upon her by the sixth paragraph of Epstein's will.

On June 4, 1948, following the filing of an account by the trustee under the testator's will, the Court of Probate ordered, with respect to the sixth paragraph, that "said sum of $10,000 be distributed, transferred and paid over pursuant to the provisions in the Will of said Ida Hershatter, and that the balance of the principal in said Trust . . . be transferred to the residue of the Estate of said Benjamin Epstein." The sole is-

sue on this appeal is whether the balance of $15,000 should be transferred as the Probate Court ordered or should be distributed to the plaintiffs.

That the paragraph presents an ambiguity is obvious. After creating a life trust of $25,000 for the benefit of his aunt and after giving her a power of appointment to dispose by will of $10,000 of the fund, the testator provides, "but if she makes no other provision, *said sum* to be equally divided among her children upon her death." Our first problem is to determine whether the two words which we have italicized refer to the $10,000 or the $25,000. We are satisfied that the testator referred to the latter.

The word "sum" appears three times in the single sentence of which the entire paragraph consists: once, when designating the amount of the trust; again, when limiting the extent of the power of appointment to $10,000; and, finally, when incorporated in the expression "said sum to be equally divided." All parties concede, as well they must, that, when used the first and second times, the word "sum" refers to the $25,000. Presumptively, a word has the same significance when repeated in a will unless it clearly appears to have been used in a different sense. *Beardsley* v. *Johnson,* 105 Conn. 98, 107, 134 A. 530; *Ansonia National Bank* v. *Kunkel,* 105 Conn. 744, 752, 136 A. 588; *Westport Paper-Board Co.* v. *Staples,* 127 Conn. 115, 125, 15 A. 2d 1.

It should also be noted that, when using the word "sum" on the second and third occasions, the testator characterized it in each instance as the "said sum." "Said" is a word of reference to something previously mentioned. *Trumbull Electric Mfg. Co.* v. *John Cooke Co.,* 130 Conn. 12, 15, 31 A. 2d 393. The only figure in the paragraph that is specifically mentioned by the testator as a "sum" is the $25,000. By a rule of syntax,

the word "said" has reference to its nearest antecedent. If the testator had designated the $10,000 as a sum, the word "said" would clearly have referred to that amount. But, inasmuch as there is but one figure called a sum, "said sum" refers to the sum of $25,000.

This interpretation finds support in one phase of the general intent apparent from a reading of the entire will. This is a consideration to which we may resort in determining the meaning to be accorded ambiguous language. *Hoops* v. *Stephan,* 131 Conn. 138, 143, 38 A. 2d 588; *Bronson* v. *Pinney,* 130 Conn. 262, 269, 33 A. 2d 322; *Mitchell* v. *Reeves,* 123 Conn. 549, 556, 196 A. 785. Provisions in a will evidencing a general intent may never explain away the expression of a particular intent. *Willis* v. *Hendry,* 130 Conn. 427, 437, 35 A. 2d 207; *Connecticut Trust & Safe Deposit Co.* v. *Hollister,* 74 Conn. 228, 233, 50 A. 750. But they may be of great weight in clarifying what is of doubtful meaning. *Bronson* v. *Pinney,* supra.

The will creates five trusts other than that set up in the sixth paragraph. A characteristic common to each of the five is the totality of disposition for which it provides. All of them are self-contained, and the manner in which the corpus of each is to be distributed indicates a studied effort to preclude the possibility of a lapse of any gift, in whole or in part, into the residue. This general plan would be carried out only if we interpret the sixth paragraph as completely dispositive in itself.

The interpretation we adopt is a reasonable and natural one under the circumstances surrounding the testator. "It is a well known rule of testamentary interpretation that where the intention of the testator is expressed in an ambiguous or obscure manner, such a construction should be adopted, if consistent with other testamentary rules, as will dispose of the prop-

erty in a just, natural and reasonable manner." *Mc-Carthy* v. *Tierney,* 113 Conn. 316, 322, 155 A. 226. It would be just, natural and reasonable for the testator to provide for the children of the nearest relative he had in America. The Hershatter family had been close to him for many years and Louis was one of the few confidants he had. As his three blood relatives in Russia were munificently provided for in the residuary clause, it seems unreasonable to ascribe to him an intention to cut off the four children of his aunt and thereby increase the residue by the relatively insignificant amount of $15,000. So, logically, without strain or interpolation, construing "said sum" as relating to the $25,000 produces a result in accord with the expressed intention of the testator.

Certain defendants insist, however, that the clause "but if she makes no other provision" creates a condition precedent to the right of the plaintiffs to take the balance of $15,000 and that, inasmuch as Mrs. Hershatter did make other provision by exercising the power, the vesting in the plaintiffs of any interest therein has been defeated because the condition has not been met. If this interpretation is correct, the condition is operative not merely as to the balance under discussion but also as to the entire fund. Should we accept this theory, it would follow that, if the donee exercised the power at all, her children would take nothing beyond that to which they became entitled under the power so exercised, while, on the other hand, if she completely failed to exercise the power, the children would receive the entire sum of $25,000. Or, to illustrate further, under this theory, if she exercised the power only to the extent of appointing a stranger to receive $100, the children would take nothing.

Words, however, are not to be construed as importing a condition if they are fairly capable of a different

construction, especially when the latter course would carry out the intention of the testator. To interpret the clause as meaning "to the extent that she makes no other provision" is as permissible as to construe it to mean "upon condition that she makes no other provision." The clause is linked, not to the gift, but to the power. The portion of the paragraph under consideration must be interpreted as creating in the plaintiffs a vested remainder in the entire fund subject to their being divested to the extent to which Mrs. Hershatter exercised her power. Where provisions of a will permit, the law will favor that construction which results in early vesting. *Gaffney* v. *Shepard,* 108 Conn. 339, 344, 143 A. 236; *Bridgeport City Trust Co.* v. *Shaw,* 115 Conn. 269, 277, 161 A. 341; *Ducker* v. *Burnham,* 146 Ill. 9, 19, 34 N. E. 558; *In re Ivy's Estate,* 4 Wash. 2d 1, 6, 101 P. 2d 1074; *Hamner* v. *Edmonds,* 327 Mo. 281, 293, 36 S. W. 2d 929.

One of the defendants has questioned the extent of review to which the plaintiffs are entitled on this appeal. The claim is advanced that, where the trial court has reached a conclusion as to the existence or nonexistence of a testator's intent, review by this court is limited to a determination of the reasonableness of that conclusion. The argument is, in effect, that, in those instances where the action of the trier is based upon a consideration of a will in the light of the subordinate facts showing the circumstances under which the will was executed, the testator's intention, as found by the trier, may not be disturbed on appeal unless the conclusion involves the application of some erroneous rule of law or has been unreasonably drawn from the facts found.

Our rule with respect to cases calling for the interpretation of a will has found its most recent expression in *Wehrhane* v. *Peyton,* 133 Conn. 478, 52 A. 2d 711,

where we said (p. 484): "The construction of a will presents a question of law to be determined in the light of facts which are found by the trial court or are undisputed or indisputable." *Spurr's Appeal,* 116 Conn. 108, 111, 163 A. 608; see *Davis* v. *Margolis,* 107 Conn. 417, 420, 140 A. 823. The case of *Union & New Haven Trust Co.* v. *Bartlett,* 99 Conn. 245, 252, 122 A. 105, is not in point and is readily distinguishable.

During the course of argument, the question was raised as to the right of the trustee to engage actively in the presentation of the case before this court. All counsel have joined in a request that we indicate the character of the participation of a trustee in litigation involving his trust. This has been the subject of comment by this court on several occasions. *Belfield* v. *Booth,* 63 Conn. 299, 309, 27 A. 585; *Smith* v. *Jordan,* 77 Conn. 469, 473, 59 A. 507; *Jacobs* v. *Button,* 79 Conn. 360, 362, note, 65 A. 150; *Central Hanover Bank & Trust Co.* v. *Nesbit,* 121 Conn. 682, 692, 186 A. 643. We are reluctant to formulate an inflexible rule which might fail to meet all future contingencies. Speaking generally, however, we believe that, where an attack is being made upon the validity of the trust, the trustee has the duty of participating actively in its defense. But where he acts, as in the case before us, merely as a defendant stakeholder, he ordinarily has neither duty nor right so to participate, particularly where all interested distributees are represented by capable counsel.

There is error, the judgment is set aside and the case is remanded to the Superior Court with direction to sustain the appeal and to remand the case to the Probate Court for the entry of an order in accordance with this opinion.

In this opinion the other judges concurred.