## Ayres Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Francis X. Diebold, Francis W. Sullivan, Michael C. McManus, George M. Kevlin, Henry M. Irwin, Joseph E. Greene, Jr.,* for *Grubb, Guest & Littleton,* for exceptants.

*James R. Ledwith* for *Pepper, Hamilton & Scheetz,* contra.

SAYLOR, J., January 7, 1965.—William M. Ayres died April 2, 1905. This trust arises under his will by which he bequeathed his residuary estate in trust upon terms which will be hereinafter considered.

The account has been filed because of the death of Anna A. Hoffman, the life tenant, on November 12, 1963, in consequence of which the trust with respect to the fund now accounted for has terminated in accordance with the trust provisions.

## 1. DISTRIBUTION OF PRINCIPAL

### A. *The issues.*

The question is raised as to which nephews and nieces of decedent are entitled to share in the distribution of the principal. This in turn involves the subsidiary questions of whether the class of "nephews and nieces" embraces the children of all brothers and sisters of decedent or only of the two who are named in the will, and, further, whether the determination of the class of nephews and nieces is to be made as of the date of decedent's death or as of the date of death of the life tenant.

These questions turn upon the construction to be given the fifth paragraph of the will, by which decedent provided:

"Upon the death of my wife, I order my estate to be divided into two parts, one of which parts I order my Executors to keep invested, and to pay the income derived therefrom to my daughter, Anna Gertrude Ayres, for her life, and out of the other half of my estate, I give to my sister Mary R. Huston the sum of Ten thousand Dollars ($10,000), and the balance of said half, I give to all my nephews and nieces in equal shares, and upon the decease of my said daughter, Anna Gertrude Ayres, to pay over one-half of the principal of my estate to the children of my said daughter; but in the event of my said daughter dying without chil-

dren, or if leaving children, such children die before attaining the age of Eighteen years, then IN TRUST, to divide the said half of my estate so devised to the children of my said daughter, Anna Gertrude Ayres, among the children of my said brothers and sisters in equal shares."

### B. Meaning of "brothers and sisters".

The meaning of the final words of the paragraph above quoted, namely, "my said brothers and sisters in equal shares," is disputed. It is pointed out that decedent had only three brothers and one sister and that accordingly he could not have intended to refer to "brothers and sisters." It is not important to determine, as has been urged, whether there was a typographical error in so referring to "sisters" when there was only one sister. Whether it is a matter of loose grammar or poor typing is immaterial, for the "sisters" obviously includes a "sister" when a decedent had but one.

It is also claimed that the phrase "said brothers and sisters" is vague because in fact decedent had up to this point referred only to one brother and one sister in his will. The answer to this contention is that the reference to "brothers and sisters" of a person necessarily includes the one brother and the one sister of that person when there are no more.

In this connection it is noted that although decedent had had three brothers and one sister, two brothers had died prior to the writing of the will. This explains decedent's naming only the one brother and the one sister in the will.

### C. Meaning of "said".

The rival contentions are made that the qualification of "brothers and sisters" by "said" (a) limits the present distribution to those who are children of the brother and the sister named in the will, as opposed to

(b) that "said" is meaningless and the present distribution should be to the children of all brothers and sisters.

The word "said" is frequently unnecessary, but it is not meaningless. It is a contraction of aforesaid and clearly refers to that which has already been said. In view of the fact that we are referring to a written document which in a figurative sense only "speaks," the word "said" does not refer to the physical act of making audible speech but merely has the meaning of above-named, above-described, or above-identified.

As the decedent in fact specified that distribution is to be made to the children of his brothers and sisters already named in the will, there is no reason why that intent should not be given effect.

It is argued that the decedent used the word "said" many times in his will and, apparently on a theory that familiarity breeds contempt, it is concluded that the word is meaningless, and that it should therefore be omitted in interpreting the provision of the will here in controversy. This argument overlooks the fact that every time decedent used the word "said" it was in connection with a noun which had already been mentioned in the will. At no point is "said" used in connection with a noun which is then mentioned for the first time. The conclusion is therefore that decedent used "said" to mean what it ordinarily means, and that he used it correctly.

It is also argued that "said" has no meaning, on the theory that it must refer to an immediate antecedent and the brother and sister named in the will were not named as immediate antecedents but in earlier portions of the will. This argument converts what is merely a guide to construction into a limiting definition. It is true that "said" would be regarded as referring to the most immediate of two or more antecedents to which it

could equally apply in the absence of any intent that a contrary meaning should be given. This does not establish that if "said" cannot apply to the immediate antecedent it should be ignored as having no meaning.

The case of Hershatter v. Colonial Trust Co., 136 Conn. 588, 73 A. 2d 97 (1950), is cited in support of the proposition that "said" is meaningless. If anything, that case stands for the proposition that "said" will refer to a remote antecedent when such is the logical meaning of the testator.

It is noted that the decedent directed that the trust estate be divided upon the death of the life tenant into two parts, with one part, less $10,000, to go "to all my nephews and nieces in equal shares," while with respect to the other half, which is now accounted for, the division is to be "among the children of my said brothers and sisters in equal shares." If "said" is deleted as meaningless, the distribution directed by the second clause becomes the same as the distribution under the first clause. If that had been intended it appears likely that decedent would have stated that the second share, the one now accounted for, should be divided among all his nephews and nieces in equal shares, just as he had done with respect to the first share. Or, he could have said that the second share should go to his "said" nephews and nieces in equal shares.

In interpreting this provision, it must be recognized that there is more involved than the inclusion of the word "said." The attitude or approach to the problem is different with respect to the two shares. With respect to the first share the decedent is clearly thinking of the recipients in terms of relationship to him as being his nephews and nieces. With respect to the second share he is thinking in terms of the recipients being the children of persons who were related to the decedent as brothers and sisters.

It is recognized that limiting distribution of the second share to the children of the named sister and the named brother will create inequality in the distribution of the estate. This fact does not in itself warrant the court to rewrite the will of decedent. It is therefore held that decedent intended exactly what he said, namely, that those persons who were the children of such brothers and sisters as he had already named in the will should receive the fund which is now accounted for.

Whether this is a fair or equitable result is not a question for consideration once it is determined that in fact it was intended. It is fundamental that a court should not rewrite a decedent's will under the guise of interpreting it. To ignore the word "said," and to interpret the provision of the will as referring to all brothers and sisters, rewrites the will of the decedent and flies in the face of the time-honored rule that every word of a will must be given effect, except where it is clear that such was not the testator's intent: Collins Estate, 393 Pa. 519 (1958). See also 6 Hunter Pennsylvania Orphans' Court Commonplace Book, 220, Wills, §2 (g). There is nothing in the will now before the court to suggest that decedent did not mean exactly what he said.

## 2. Conclusion.

It is held that the provision of the will in question refers only to Louis H. Ayres and Mary R. Huston, and that distribution is to be made to their children.

### Opinion Sur Exceptions

Klein, P. J., April 2, 1965.—We are all in accord with the auditing judge's conclusion that the remainders to testator's nieces and nephews were vested subject to a divesting contingency which never eventuated and that the membership of the class is, therefore, determined as of the date of testator's death.

However, a majority of us do not agree with his conclusion that the distribution is limited to the children of testator's brother, Louis H. Ayres, and of his sister, Mary R. Huston. In our opinion, all of testator's nieces and nephews who survived him are entitled to participate in the distribution which should be made in twelve equal shares, instead of five as directed in the adjudication.

Testator had three brothers, G. Ralston Ayres, John C. Ayres, and Louis H. Ayres. Both G. Ralston and John predeceased him. He only had one sister, Mary R. Huston. Louis is the only brother mentioned in the will, and he receives no benefits thereunder. He is merely referred to in the fourth paragraph as a member of decedent's firm, William Ayres and Sons, and is also named as an executor. The sister, Mary, is named as an annuitant in the fourth paragraph and as a legatee for $10,000 in the fifth paragraph.

The disputed language "to divide the said half of my estate . . . among the children of my said brothers and sisters in equal shares" is found in the fifth paragraph of the will. There can be no question that this language is ambiguous and cannot be given a clear and precise meaning.

The testator or the scrivener apparently had a penchant for using the word "said" as it appears 31 times in the will and codicil. This adjective is synonymous with "aforesaid" and "before-mentioned." In each of the instances where it is used with the exception of the phrase in question, there is a clearly designated antecedent. However, in the disputed phrase, "said" is obviously used inaccurately, both in terms of logic and of grammar.

The testator certainly knew that he had only one sister. It is crystal clear, therefore, that he could not have intended the use of the plural "sisters." Moreover, testator had previously only mentioned one of his three

brothers. Therefore, there is nothing in the will to which "said brothers and sisters" could refer accurately. As a result, the word "said" has no precise or intelligent meaning as used by the testator in designating his "brothers and sisters."

The law is well settled in this State that where the language of a will is not clear a construction which will work equality of distribution among those standing in the same relation to the testator will be favored: Ziegler Estate, 356 Pa. 93, 95 (1947); Hirsh's Trust Estate, 334 Pa. 172 (1939); Edelman's Estate, 276 Pa. 503, 508 (1923); Schick Estate, 169 Pa. Superior Ct. 226 (1951); Jones Estate, 151 Pa. Superior Ct. 396, 400 (1943).

This rule is buttressed by an equally well entrenched principle which holds that when the will leaves the mode of distribution doubtful, the court will apply, by analogy, the principles of the State of intestate distribution: Hunter's Pennsylvania Orphans' Court Commonplace Book, 2d Ed., vol. 6, p. 255, et seq. See England Estate, 30 D. & C. 2d 208, 212 (1963), affirmed 414 Pa. 115 (1964); Love Estate, 362 Pa. 105 (1949); Scott's Estate, 163 Pa. 165 (1894); Lenhart's Estate, 344 Pa. 358 (1942). See also McDowell's Estate (No. 2), 29 D. & C. 2d 469 (1963). In Sipe's Estate, 30 Pa. Superior Ct. 145, 150 (1906); Rice, P. J., said:

"The statute of distributions governs in all cases where there is no will; and where there is one, and the testator's intention is in doubt, the statute is a safe guide; Ashburner's Estate, 159 Pa. 545."

In this fifth paragraph testator divided his residuary estate into two equal parts following his wife's death. One-half was given to "all my nephews and nieces in equal shares" after the payment of $10,000 to his sister, and the other half was directed to be divided "among the children of my said brothers and sisters." There is

no valid reason to believe that the testator intended to favor certain selected nieces and nephews in the second half while providing for all of them equally in the first half. It is just as logical to assume that he intended to benefit the children of his sister and all of his brothers equally in the disposition of his entire estate.

The adjudication is accordingly modified to conform with this opinion, and as modified is confirmed absolutely.

Judge Shoyer filed a dissenting opinion in which Judge Saylor joins.

OPINION SUR EXCEPTIONS

*Concurring in Part and Dissenting in Part*

SHOYER, J., April 2, 1965. — The majority would treat what is most likely a typographical error, that is the adding of the letter "s" to the words "brother" and "sister," in paragraph fifth of the will, as a declaration in favor of three brothers and one sister, while at the same time completely rejecting the word "said" which refers to the one brother, Louis H. Ayres, and the sister, Mary R. Huston, to whom, and to whom only as such, reference was made by name in an earlier part of the will as no other brother, and of course, no other sister, was previously named.

My study of this will from its four corners, with especial attention to paragraph fifth, convinces me of testator's intention to distribute the second half of his residuary estate in a selective and unequal manner just as surely as he provided for an equal distribution of the first half. The sharp difference in testator's language in disposing of the two parts of his estate is more than sufficient proof of his changed intent.

In one case he directed that principal go "to all my nephews and nieces in equal shares." In the other, in-

stead of using that phraseology, he provided that principal be divided "among the children of my said brothers and sisters."

How could he have expressed his intention as to equality of the first half with more clarity or precision? For emphasis he has even included the adjective "all." Indeed, one may observe a penchant for use of the word "all," which appears in every paragraph of the will and codicil except the third and sixth, just as the majority has noted with regard to the repeated use of "said." The two adjectives are antonyms, not synonyms, however, and in no instance is there any ground for suspecting that testator confused one with the. other. They stand in sharp contrast. Surely testator would again have used "all" if he had intended equality and the word "said" did not slip in by mistake. We may be sure then that testator's use of "said" was something more than accidental surplus which the majority has chosen to reject from its consideration.

Testator's will was typewritten and we know from experience that the accidental addition of an "s" to a singular noun is a common typographical error. The error in "sisters" can be explained in no other way as testator never had but one sister. Even the majority agree that it must be dropped for this reason. Construction of the plural "brothers" is less easy. The adjudication rationally suggests that "the reference to 'brothers and sisters' of a person necessarily includes the one brother and the one sister of that person when there are no more." If, however, the continued presence of "brothers" along with "said" appears irreconcilable, it seems more logical to drop the "s" from "brothers" as another typographical error rather than to substitute "all" for "said" as the majority in effect are doing. A skilled surgeon excises only diseased tissue, no

healthy flesh.* In construing testator's language a wise judge will reject only that which presents an insurmountable obstacle to a sound construction. Effect should be given to "every word employed by the testator and a construction which renders any of the words nugatory and futile must be rejected": Vandergrift Estate, 406 Pa. 14, 26. There is no rule which gives similar sanctity to, nor precludes the dropping of, a mere suffix.

Other parts of the will clearly express inequality. Thus with twelve living nephews and nieces to remember, testator has given pecuniary legacies to only three. Along with these gifts he has given two legacies to his sister, ignored completely one of her three children, and remembered a cousin and one nonrelative. Surely this does not spell out the equality favored by the majority of this court.

In Page's Estate, 227 Pa. 288, 289, Judge Penrose followed the rule that "where a testator uses a different word or phrase he will be presumed to have a different meaning." Accord: Elliott v. Diamond Coal & Coke Co., 230 Pa. 423, 425; Meily v. Meily, 147 Pa. Superior Ct. 140, 143; Estate of Thomas Fletcher, 103 Pa. Superior Ct. 69, 72. A corollary to this rule would be that where testator has once expressed equality in the clearest possible language as here, no court should impress the same equality on another gift where testator has chosen wholly different but somewhat ambiguous language which, while it may not precisely define his exact intention, certainly does not obscure his desire for a contrary result. We should heed the warning of our Supreme Court that ". . . we must be constantly alert to see that artificial rules of construction should be resorted to only where the intent of a testator as gleaned from his language is obscure, or where there is com-

---

* "To cure a hangnail one does not amputate the finger, let alone the whole arm"—after Aesop.

pelling practical necessity for their application; *and when the reasons on which they are founded do not exist they ought not be applied": Earle Estate, 369 Pa. 52, 60. (Italics supplied.)

For these reasons, as well as those set forth by the learned auditing judge in his adjudication, I would affirm distribution to the heirs in five equal shares. Hence I dissent from that part of the majority's action and opinion increasing the shares to twelve.

Saylor, J., joins in this concurrence and dissent.