McDonough Co., *etc.*

*v.*

E.I. DuPont DeNemours & Co., Inc., *etc.*

(No. 15041)

Decided July 14, 1981.

*Orville L. Hardman, Edward W. Eardley, Steptoe & Johnson,* for appellant.

*Earley, Bailey, Pfalzgraf & Seufer, John S. Bailey, Jr.* and *Howard E. Seufer, Jr.,* for appellee.

HARSHBARGER, CHIEF JUSTICE:

McDonough Company sought trespass damages of $487,000 and a declaratory judgment about ownership of sand and gravel on Blennerhassett Island. E. I. duPont deNemours & Company counterclaimed for a declaratory judgment about ownership of surface and sand and gravel rights. The trial court declared the parties' rights, from which plaintiff excepts and appeals. (The trespass is not involved here.)

I.

On April 18, 1960, Kanawha Sand Company deeded three tracts on the island to James E. Sands with the following relevant exceptions and reservations:

> 1. The said party of the first part, for itself, its successors and assigns, does hereby except an reserve from this conveyance all sand and gravel now or hereafter to be located or found lying between low water mark of the Ohio River, that is, above the line to which the water receded at its lowest stage before the installation of locks and dams now built in said Ohio River, and the top of the bank or banks along the shores of said island, together with the exclusive right and privilege to dredge and remove any and all of the sand and gravel from said land, within the boundaries thereof, as hereinbefore described, and the right to maintain and fasten to the banks of said island such lines as may be necessary or convenient in the

dredging and removal of said sand and gravel, and the right to put in a dredge or dredges to any spot on the island as may be selected or determined by the said party of the first part.

2. This conveyance is made at a consideration that reflects the reservation of the absolute right to the removal of sand and gravel by the party of the first part, and, in consideration of the reduction in said sale price, and as a part of the consideration for this sale and conveyance, the party of the second part, for himself, his heirs, successors and assigns, by the acceptance and recordation of this deed, does hereby release the said party of the first part, its successors and assigns, of and from any liability whatsoever for damage to said land, its banks, shores and beds resulting from dredging operations or other operations for the removal of sand and gravel from said land, including any loss or damage to growing crops or other property which might be occasioned by virtue of the caving or erosion of portions of said tract as a result of digging or excavation for sand and gravel.

DuPont acquired these three tracts;[1] McDonough now owns the reserved sand and gravel rights.

DuPont, with authorization by the Army Corps of Engineers, constructed a rip rap wall for erosion protection along the island's north side. The trial court found that McDonough had sand and gravel rights from the low-water mark to the high-water mark and that duPont owned the balance of surface and sand and gravel rights. McDonough protests that its shore rights extend to the top of the bank, and disagrees that sand and gravel beneath the island belong to duPont.

## II.

Deed words that are not ambiguous should not be construed. *Bruen v. Thaxton*, 126 W.Va. 330, 28 S.E.2d 59 (1943). Parties are bound by general and ordinary meanings of words used. *Bruen v. Thaxton, supra; Mills v.*

---

[1] DuPont has leased the property to West Virginia for a state historical park.

*Edgell,* 69 W.Va. 421, 71 S.E. 574 (1911); *Williams v. South Penn Oil Co.,* 52 W.Va. 181, 43 S.E. 214 (1902), *overruled on other grounds,* 94 W.Va. 81, 118 S.E. 162 (1923).

McDonough's reservation included "all sand and gravel now or hereafter to be located or found lying between the low water mark of the Ohio River ... and *the top of the bank or banks* along the shores of said island." (Emphasis added.) No one contests the low-water mark definition. This deed's scrivener, having skillfully defined the low-water mark as one boundary, could easily have set his other boundary at the high-water mark. He certainly demonstrated drafting expertise sufficient to compel us to conclude that if he had intended "high-water mark", he would so have written. But instead, he specified the top of the bank or banks as the landward boundary. "Bank" is defined in Webster's Third New International Dictionary as "2a ... the rising ground bordering a lake, river, or sea ...."[2]

The trial court erred in deciding "top of the bank" meant "high-water mark", and to that extent its order is reversed and remanded with directions that it be modified to define the reservation as worded in the deed.

### III.

Does paragraph 1 of the deed reservation give McDonough rights to the sand and gravel beneath all three tracts? Reservations are strictly construed against a grantor and in favor of a grantee, *Rastle v. Gansjager,* 151 W.Va. 499, 153 S.E.2d 403 (1967); *Bennett v. Smith,* 136 W.Va. 903, 69 S.E.2d 42 (1952); *Chapman v. Mill Creek Coal,* 54 W.Va. 193, 46 S.E. 262 (1903). To be effective, reservations must be as clear and definite as granting clauses. *Bennett v. Smith, supra.* This deed clearly described the reservation, and continued:

> [T]ogether with the exclusive right and privilege to dredge and remove any and all of the sand and

[2] The top of bank changes because of erosion and effects of dredging, and so that boundary must be located as it was in 1960 when the deed was drafted. *See Carpenter v. Ohio River Sand and Gravel Corp.,* 134 W.Va. 587, 60 S.E.2d 221 (1950), Syllabus Point 5, citing *Union Sand and Gravel v. Northcott,* 102 W.Va. 519, 135 S.E. 589 (1926).

gravel from said land, within the boundaries thereof, as hereinbefore described, and the right to maintain and fasten to the banks of said island such lines as may be necessary or convenient in the dredging and removal of said sand and gravel, and the right to put in a dredge or dredges at any spot on the island as may be selected or determined by the said party of the first part.

When there are two or more possible antecedents, an applicable rule of construction is that "said" refers to the nearest or next preceding one. *Garrett v. South Penn Oil Co.*, 66 W.Va. 587, 66 S.E. 741 (1909); *see Hershatter v. Colonial Trust Co.*, 136 Conn. 588, 73 A.2d 97 (1950); *Sharp v. Sharp*, 333 Ill. 267, 146 N.E. 685 (1928); *Ward v. Torian*, 216 Ala. 288, 112 So. 815 (1927). "[S]aid land, within the boundaries thereof, as hereinbefore described" refers to the immediately antecedent description of land reserved, being the shore from bank top to low-water mark.

Had our grantor intended to reserve sand and gravel beneath all three tracts, he need only have said so. Instead, his reservation of sand and gravel rights has considerable boundary specificity, limiting them to the shore area. All other references to sand and gravel are to release a taker thereof from liability for injury to the remainder of Blennerhassett Island caused by processes used to get at and remove those materials.

We affirm the remainder of the trial court's order.

*Affirmed in part;*
*reversed and remanded*
*in part with*
*instructions.*