In the Matter of the Accounting of SECURITY TRUST COMPANY OF ROCHESTER, as Trustee of a Trust Executed by O. FRANK WOODWARD, Deceased, Respondent. JACOB ARK, as Guardian ad Litem of ORATOR E. WOODWARD, Appellant.

Fourth Department, July 8, 1954.

Selig J. Levitan, Robert Zuckerman, Thomas Field and Jacob Ark, in person, for Jacob Ark, appellant.

George J. Skivington for respondent.

WHEELER, J. This appeal brings before us for review an order made in a proceeding under article 79 of the Civil Practice Act for the judicial settlement of the account of Security Trust Company of Rochester, New York, as trustee under an *inter vivos* trust executed by the settlor, O. Frank Woodward, now deceased, on February 9, 1928.

The particular problem in this proceeding relates to the extent to which the settlor reserved to himself the right and power to change or modify the proportion or amount of the beneficial interests of remaindermen. The petitioner, as trustee, seeks an order directing equal distribution of the net balance of the trust fund to settlor's children, Ruth E. Woodward Finch and O. Frank Woodward, Jr., neither of whom has answered. The settlor's third child, O. Ernest Woodward, by his guardian ad litem, has filed an answer, praying that one third of the trust corpus be set aside for his benefit. The Referee to whom the matter was referred has determined that the settlor reserved the power to exclude any beneficiary from the trust fund, and that such power was validly exercised to extinguish the interest of the infant son, Ernest, who appeals from the order to that effect.

O. Frank Woodward was twice married. The two children, the daughter Ruth and the son Frank, Jr., were born of the first marriage, which was terminated in 1929 by a Mexican decree of divorce. The son Ernest, born in 1933, is the sole issue of the second marriage, which ended in a Nevada decree in 1942. Woodward was forty-four years of age at the time he executed the *inter vivos* trust involved in this proceeding. The infant son of the second marriage, Ernest, was not born until some five years later. The three above-mentioned children survived their father and are still living.

By the trust instrument of 1928, Mr. Woodward assigned to his trustee securities aggregating approximately $5,000,000. He reserved to himself the income during his lifetime and directed that upon his death the corpus should be divided " into as many separate and distinct trust funds as there shall be lawful issue of mine surviving me and lawful issue who may theretofore have died leaving issue then surviving; it being my intention that one of such trust funds shall be held and administered for each of my surviving children and that the then living children of any deceased lawful issue shall take and have the benefit in equal shares of the fund to which their parent would have been entitled if then living, the share of each such grandchild to be held and administered as a separate trust fund for his or her benefit." (Par. III of Trust Agreement.)

In paragraph VI of the trust instrument settlor reserved a broad power of amendment, as follows: " VI. I hereby reserve the right and power to change and modify by written instrument duly executed and acknowledged and filed with my Trustee to be attached to this instrument and made a part thereof, any or all of the provisions of paragraph fourth or fifth hereof limiting or prescribing investments, *also the amount or proportion of said trust estate which shall form the trust fund for any child or grandchild of mine after my death,* also the time, manner or amount of payment of any part of the principal of any such trust fund, also to direct that the payment of any part of the income of any such trust fund may be made to or for the benefit of any such child or grandchild before he or she shall reach the age of twenty-one years." (Emphasis supplied.)

The settlor amended the trust agreement, pursuant to the above-quoted reservation of power, or purported to do so, on six occasions, the following of which are pertinent to the problem before us:

The amendment of April 22, 1938, effected such changes as were necessary to eliminate Ernest and other after-born children from substantial enjoyment of the trust and to limit the substantial enjoyment thereof to Ruth and Frank, Jr., and their issue. It was provided that Ernest and every child, other than Ruth and Frank, Jr., should receive a one ten-thousandth share, to be paid to the recipient one year after the settlor's death. In the third amendment (August 1, 1942) he left the one ten-thousandth share for Ernest unchanged, and made changes only in the method and manner in which the equal remaining shares should be paid. The fourth amendment (August 27, 1947) continued the one ten-thousandth share and again made changes in the manner and method of payment for the other two children. In the fifth amendment (May 18, 1950) he entirely excluded the infant son, Ernest, directing that he receive "no amount or proportion of the trust estate" because "I have amply provided for him in my Will hereinafter referred to and otherwise." Other changes in the manner and method of distribution of the remaining two shares were again made. The final amendment (August 9, 1950) continued the exclusion of Ernest and reiterated the reason therefor. It also made further changes with reference to the trusts for the other two children. All of the amendments recited the power reserved in paragraph VI and stated the settlor's intention to remain free to make further changes in the future.

It is, of course, fundamental that settlor's intent must be determined from the four corners of the document, which must be deemed to speak as of the time of its date. (*Matter of Durand*, 250 N. Y. 45; *Metcalf* v. *Union Trust Co.*, 181 N. Y. 39, 45; *Matter of Silsby*, 229 N. Y. 396, 402.) It is likewise well settled that if the settlor does not reserve the power to modify a trust his attempt to do so is ineffectual. (*McKnight* v. *Bank of New York & Trust Co.*, 254 N. Y. 417; 52 A. L. R. 686, Right to Amend Trust.)

Although the separate trust funds for his children were not designated as equal, there can be no question that under the disposition contained in paragraph III, standing alone, Ernest would be the beneficiary of a separate trust equal to one third of the total fund. The trustee is not obligated to contend in this proceeding, and does not contend, that a full power to revoke or terminate the trust was reserved, but only that by changing "the amount or proportion" of Ernest's share, the settlor could eliminate it entirely. The guardian ad

litem insists that the attempted amendments, insofar as they affect the interests of his ward, are beyond the scope of the power reserved. He asserts that an exactly literal interpretation of the words " change and modify * * * the amount or proportion of said trust " precludes complete cancellation of the interest of any beneficiary, that there must be some trust for each child, and that it must contain a reasonable sum. What that might be, we are not informed. He argues that the settlor reserved merely a power to modify the share of a beneficiary " within reason," that no share could be reduced to " an unsubstantial or nominal amount," and that zero is no " amount or proportion ". However, there can be no question that settlor did, in fact, reserve the right to " change and modify * * * the amount or proportion ". But to what extent? The instrument itself contains no limitation upon this particular reserved power. Nor do we find, upon considering the document as a whole, any indication that Mr. Woodward intended to limit his power to reduce, change or modify the amount of a beneficial share to such an amount as someone after his death may determine to be reasonable.

If we are correct in assuming that he reserved the right to modify the amount without limitation, it follows that the choice was his to reduce to any amount, even though that amount be negligible. Viewing the problem realistically, there is actually no substantial difference in the end result whether the settlor entirely excludes a child or modifies the amount of his share to a mere nominal amount. If the most that the guardian ad litem can claim in behalf of his ward is merely nominal recognition, then a court of equity will not interfere. (*Morgan* v. *Sanborn,* 225 N. Y. 454, 460.)

Although there is a dearth of decisions exactly in point, we find authorities which, in principle at least, support our belief that the particular reserved power was validly executed. " If the settlor reserves a power to modify the trust, it is a question of interpretation to be determined in view of the language used and all the circumstances whether and to what extent the power is subject to restrictions. *If the power to modify is subject to no restrictions, it includes a power* to revoke the trust." (Emphasis Supplied.) (Restatement, Trusts, § 331, comment h. See, also, 3 Scott on Trusts, § 331.2.) Thus, a power " to add to or decrease said fund " includes a power to revoke the trust (*Trenton Banking Co.* v. *Howard,* 187 A. 569, affd. 121 N. J. Eq. 85), and a power " to modify, alter or amend

this agreement in whole or in part'' authorizes a change of beneficiaries (*Matter of Solomon,* 332 Pa. 462, 463). A settlor who has reserved the right to amend the trust '' in any manner whatsoever '' or in '' any and every respect '' may eliminate nonconsenting or minor beneficiaries and revoke the trust under Personal Property Law (§ 23) (*Faulkner* v. *Irving Trust Co.,* 231 App. Div. 87; *St. George* v. *Fulton Trust Co.,* 273 App. Div. 516), even though the trust is in terms irrevocable (*Meyer* v. *Bank of Manhattan Trust Co.,* 232 App. Div. 228; cf. *Porter* v. *Commissioner,* 60 F. 2d 673, 674, affd. 288 U. S. 436). In *Matter of Steiner* (134 App. Div. 162, 164), the will devised the estate to appellant to use it for the benefit of himself and his sisters '' in such proportions and at such times and in such manner as he * * * shall in his judgment and discretion deem proper, right and advisable.'' The court stated: '' All is left to his discretion. He may give such amount to his sisters as he may choose to, or nothing.'' (See, also, *Matter of Corlies,* 201 Misc. 755.)

In addition to what we believe to have been Mr. Woodward's intention as expressed in the trust instrument, we agree with the learned Referee that section 158 of the Real Property Law is largely controlling.

'' § 158. *Distribution when more than one beneficiary.* Where a disposition under a power is directed to be made to, among, or between, two or more persons, without any specification of the share or sum to be allotted to each, all the persons designated shall be entitled to an equal proportion; but when the terms of the power import that the estate or fund is to be distributed among the persons so designated, *in such manner or proportions as the grantee of the power thinks proper, the grantee may allot the whole to any one or more of such persons in exclusion of the others.''* (Emphasis supplied.)

The full import and effect of this section may be better understood by considering the historical background which prompted its enactment in 1830 as part of the Revised Statutes. (Rev. Stat. of N. Y. 1829, part II, ch. 1, art. III, §§ 98, 99). As this history has been reiterated many times, we deem it unnecessary to enter into any extended or detailed review thereof. (See *Matter of Skidmore,* 148 Misc. 569 [DELEHANTY, S.]; Revisers' Notes to §§ 98, 99; 3 Rev. Stat. of N. Y. [2d ed.], 1836, pp. 592–593).

It is sufficient to note that prior to the enactment of the Revised Statutes a conflict had arisen between law and equity

over the proper application of the rule in case a fund was directed to be distributed amongst several persons in such sums or proportions as the trustee of the power might think proper. At law a nonexclusive power (one where no right of selection or exclusion is granted) was held well executed if each object received a share, however small. It became the practice of the English chancery courts, however, to supervise the execution of nonexclusive powers so that no object could be effectively excluded by awarding him a nominal or unsubstantial sum. Equity would not respect such an "illusory appointment". (See 100 A. L. R. 343.) The illusory appointment doctrine applied only to the exercise of nonexclusive powers (41 Am. Jur., Powers, § 64). The doctrine was found to be impracticable in its application and became the subject of much criticism from the equity judges themselves. (See *Butcher* v. *Butcher,* 9 Ves. Jr. 382, 393; *Kemp* v. *Kemp,* 5 Ves. Jr. 849, 858; *Spencer* v. *Spencer,* 5 Ves. Jr. 362.) As applied to the facts in the early English cases, it seemed innocent enough. But serious difficulties later arose as the cases became closer and closer, with each subsequent grantor adding a few pounds to the appointment most recently held illusory. The result was a mixture of uncertainty and arbitrariness.

Section 158 was designed to abolish the equitable doctrine of illusory appointment. The objective of the statutory predecessor of section 158 was clearly stated in the Revisers' Notes of 1836: "It is believed by the Revisers that all the difficulties on this subject are avoided, and the intent of the party creating the power fulfilled, by making the discretion of the trustee extend to a selection of the objects, as well as to the amount of the shares; by giving him *directly* the power, which *indirectly* he may now exercise." This purpose was accomplished by section 158, which provides that the entire fund may be given to one object when the power permits a distribution "in such manner or proportions as the grantee of the power thinks proper". (*Matter of Remsen,* 126 Misc. 25, affd. 215 App. Div. 832; *Matter of Corlies,* 201 Misc. 755, *supra.*) See, also, *Morgan* v. *Sanborn* (225 N. Y. 454, 460, *supra*) in which section 158 was applied by analogy to an agreement to make a will. In referring to the statute, the court said: "What was sought was the intent of the grantor of the power, and this rule was finally reached as the true expression of that intent." On the other hand, a power which leaves no discretion in the donee as to the amount or propor-

tion of the shares is governed by the first part of section 158, and the objects take equally.

It should also be noted that article 5 of the Real Property Law, of which section 158 is a part, was intended as a complete and exclusive code with regard to the subject of powers and that it is applicable as well to powers concerning personal property as to those affecting real estate. (*Matter of Moehring,* 154 N. Y. 423, 427.) Section 131 broadly defines " power " as " an authority to do an act in relation to real property, or to the creation or revocation of an estate therein, or a charge thereon, which the owner, granting or reserving the power, might himself lawfully perform." Power to revoke a trust or alter the beneficiaries is a technical " power," much akin to a power of appointment. (*Matter of Goldowitz,* 145 Misc. 300; *Sears* v. *Coolidge,* 329 Mass. 340; Restatement, Property, § 318, comment i.)

If we were to reverse this judgment, it would be necessary once again to make the futile attempt to draw the limits of an illusory appointment, an endeavor which the Legislature long ago closed to the courts of this State. The guardian ad litem states quite frankly in his brief that he relies on " the equitable doctrine of illusory appointments," but he concedes that the settlor reserved a power to alter " the amount or proportion " of the shares. Under section 158 such a power includes a power to exclude.

Finally, appellant contends that the last four amendments to the trust are void because the acknowledgments were taken outside the State and were not authenticated by the foreign county clerks. (See Real Property Law, § 311, subd. 2; Civ. Prac. Act, § 386.) This contention is without merit. It is fundamental that an instrument which does not comply with those statutes is, nevertheless, effective as between the parties, although it is not entitled to be recorded or read into evidence in this State. As the settlor has stated no requirement of formal authentication, we are being asked to imply an additional condition. The enumerated conditions, providing that an amendment may be made " by written instrument duly executed and acknowledged and filed with my Trustee to be attached to this instrument and made a part hereof ", have been fully complied with. (See, also, Real Property Law, §§ 170, 171; *Matter of Goldowitz,* 145 Misc. 300, *supra.*)

Our conclusion is that the settlor, by the power reserved in paragraph VI of the trust instrument, intended to and did

reserve to himself the absolute and unlimited power during his lifetime to determine the manner in which this trust fund was to be distributed among his children after his death. We are also satisfied that the power so reserved was well executed. The order should be affirmed.

All concur. Present — McCURN, P. J., VAUGHAN, KIMBALL, PIPER and WHEELER, JJ.

Order affirmed, without costs of this appeal to any party. [See *post,* p. 838.]