# Albert Gray Avery v. Emilie B. Bender Et Als

[126 A2d 99]

May Term, 1956

Present: Jeffords, C. J., Cleary, Adams and Hulburd JJ. and Sylvester, Supr. J.

Opinion Filed October 2, 1956.

314

*Lawrence & O'Brien* and *Robert W. Owens, Jr.*, (of the New York Bar, of Counsel) for the defendants,

*Lawrence C. Jones* and *Wayne C. Bosworth* for the plaintiff.

**Adams, J.** This is a petition for a declatory judgment brought to the court of chancery for Rutland County. It involves the construction of certain parts of an inter vivos trust instrument and the rights of the plaintiff and the defendants thereunder. It is here on exceptions of the defendants.

A hearing was had by the chancellor on the petition, amendments thereto, answers, pleadings, agreed statement of certain facts, exhibits and statements of counsel. No oral testimeny was taken. The chancellor made and filed findings of fact. A declaratory decree was entered in favor of the plaintiff. The defendants, Emilie B. Bender, Katharine Avery Hettinger, individually and Josephine Gray Avery, trustee, excepted to certain findings of facts, to the chancellor's failure to find certain requests for findings, and were also allowed exceptions to the decree. They filed a joint bill of exceptions.

Unexcepted to material findings show that on September 21, 1921, Brainard Avery, who practiced law in New York City, from about 1904 to 1938, and his wife, Josephine Gray Avery, both then residents of New York City, executed and established in New York an inter vivos trust by deed of property situated in New York. They named therein Robert K. Wehner, Esq., of Newark, N. J. and The New York Trust Co. of New York City as joint trustees. At that time Brainard and Josephine, the settlors, had three minor children, Albert, the plaintiff,

born March 23, 1904, Katharine, the defendant Hettinger, born September 29, 1908 and Brainard, Jr., born February 24, 1911. The latter deceased on July 7, 1926, unmarried, intestate and without issue.

The plaintiff and the defendants, Emilie B. Bender and Katharine Hettinger now reside in the city, county and state of New York. In 1939, both Brainard and Josephine moved to Middletown Springs, Rutland County, Vermont where they had maintained a home since about 1906 and they both continued to reside there until the decease of Brainard. Josephine has continued to reside there since then and she is now 81 years old.

The defendant, Katharine, has one son, Thomas A. Hettinger, a minor, who resides with her and he is her only child. She first married Reginald Coggeshall in 1935, from whom she obtained a divorce in 1942. In 1944 she married Herman S. Hettinger, from whom she was divorced in 1952. The defendant Bender is not related by blood or marriage to any of the parties hereto.

At the time the deed of trust was executed in 1921, Brainard Avery had two brothers, John W. Avery and Wayland Avery, who then and thereafter until their deaths lived outside the state of New York. They both survived Brainard and died in California in 1953. On April 23, 1937, John had three adult children and Wayland had three minor children.

In 1921, when the trust deed was executed the property granted by it consisted of personal property only and it was specificily enumerated therein. In 1939, the trust property was removed to Vermont and it has remained there since then.

The original deed of trust was amended seven times; first, on March 17, 1937; second, on April 9, 1937; third, on April 19, 1937; fourth, on April 23, 1937; fifth, on June 13, 1937; sixth, on November 28, 1939 and seventh, on December 30, 1946.

The findings of fact set forth verbatim a large part of the trust deed, [Finding 3]. It provided that the trustees should make no investments or reinvestments without the written direction of Brainard and Josephine or in the event of Josephine's death or ceasing to be Brainard's wife of Brainard alone. During the lifetime of Brainard the sole responsibility of the trustees was for the preservation of the securities and cash and accounting therefor. After Brainard's death, the trustees became

responsible for the investment and reinvestment of the trust property as authorized by the laws of New York pertaining to the investment of trust funds. [Article, II]

No loans were to be made to Brainard and/or Josephine, directly or indirectly, without adequate security. [Article III]

The trustees were directed to open three bank accounts with The New York Trust Co. in their names as joint trustees. 1. A principal account for the deposit of all principal sums belonging to the trust to be invested. 2. An insurance fund. Beginning with October 1, 1921, and on the first of each and every month thereafter, there should be deducted from the income, $75. which should be deposited in this account to be dealt with as provided in Schedule G. Insurance Fund. 3. Income account, in which should be deposited all the remaining income in cash to be disbursed during the lifetimes of Brainard and Josephine; (a) subject to their joint check or order or to either one alone if the other should so elect. (b) If Josephine should survive Brainard or if Brainard should become insolvent then to Josephine alone for her life. (c) If Brainard should survive Josephine, then to him alone for his life. If Josephine should cease to be Brainard's wife then at his election, she should lose all interest in the income and the entire income then be paid to Brainard during his life, subject to Article VI at his election. Brainard and/or Josephine reserved the right to direct the deposit by the trustees of the income or any part of it in any other bank. [Article IV]

Securities could be withdrawn from the trust by Brainard and or Josephine by the substitution of cash or other securities of equal value. [Article V]

Should Brainard become entitled to the entire income, he could, at his election and under such conditions as he might prescribe, renounce his interest for life or for a period less than that in all or any part of the income in favor of any one, two or all three of the children of the marriage, naming them and their birth dates. [Article VI]

We now quote from the trust deed;-

### "VII. DISTRIBUTION OF TRUST ESTATE

(a) Upon the decease of both Brainard and Josephine, said Trust Estate shall, in case of the failure of Brainard

to exercise the power of appointment first hereinbelow mentioned, vest in said three children of said marriage, or in the survivors or survivor of them, share and share alike.

(b) Brainard, however, shall have the right (and Josephine hereby consents thereto) to dispose of all or a part or parts of said Trust Estate, by power of appointment contained in his last Will and Testamant, to such one, ones or all of the three children of said marriage [Albert, Katharine, and Brainard Junior] as he may direct and appoint, and subject to such conditions and restrictions as he may impose: all subject, however, to Josephine's life income in the Trust Estate.

(c) Should Brainard survive Josephine and all of said three children, he shall have the right [and Josephine hereby consents thereto] to in his discretion dispose of all or a part or parts of said Trust Estate to such of his next to kin as he may direct and appoint in and by power of appointment contained in his last Will and Testament.

(d) Should Brainard survive Josephine and all of said three children of said marriage, and should he in such case fail to exercise the power of appointment hereinbefore last mentioned, then upon Brainard's death said Trust shall terminate and said Trust Estate shall be divided equally among Brainard's next of kin."

The compensation of the trustees was fixed by Article VIII.

During the lifetimes of Brainard and Josephine, the trustees or either of them could be removed by notice in writing signed by Brainard and Josephine or by Brainard alone if he survived Josephine or the marriage ceased. There were certain provisions about successor trustees having to be, in some cases, a bank or trust company. [Article IX]

Article X contained general provisions in regard to the powers and duties of the trustees and is not particularly material in connection with the questions discussed in this opinion.

We again quote from the trust instrument;-

## "XI. AMENDMENT OF TRUST DEED

This deed may be amended in writing, but not re-voked, at any time by the concurrence of Brainard and Josephine, and upon Josephine's death by Brainard alone, if he shall survive her."

Brainard died testate in Middletown Springs on February 6, 1947, without ever exercising the power of appointment referred to in the deed of trust. (Finding 4)

On September 26, 1921, Josephine executed to Brainard an irrevocable power of attorney in which she made, constituted and appointed Brainard "my true and lawful attorney-in-fact, for me and in my name to do, execute and perform any and all acts which I could do if personally present with respect to my property, property rights, business and financial affairs, with full power and authority in any and all the premises, and in such manner as my said attorney shall think proper, * * * of which my said attorney shall judge expedient or necessary in and about, for or concerning, the premises or any of them, as fully as I * * * could do if personally present, * * *." (Finding 14)

From an examination of the provisions of the trust deed, it fairly appears, subject to the non-revocation provision, that the settlors, during the lifetime of both and particularly Brainard, during his lifetime, because of special provisions pertaining to him alone, including the power of attorney, retained complete control and domination over the trust property and its attributes. They parted with the title only and that was not entirely unconditional. Although the trust could not be revoked, the settolr could withdraw securities by substituting others of equal value.

We now come to the amendments that are set forth verbatim in the findings.

The first amendment, dated March 17, 1937, was signed by Brainard and Josephine personally. It recited the death of one child, Brainard, Junior; that Wehner, one of the trustees was no longer living; the Tne New York Trust Co. was acting as sole trustee; that it was the desire and intention of Brainard and Josephine to amend the indenture and therefore pursuant to the

power reserved to them by Article XI, they thereby amended it as follows,—They eliminated in its entirety Article VII, and "in-"instituted" in lieu thereof the following;—

## "VII. DISTRIBUTION OF TRUST ESTATE

(a) Upon the decease of the survivor of Brainard and Josephine, said Trust Estate shall, subject to the exercise of the power of appointment hereinbelow mentioned, vest in absolute ownership, share and share alike, in the two of the said three children of said marriage who are now living or, if either one of said children be no longer living at that time, in the sole survivor, of said children; or, if the sole survivor of said children be then deceased, in the estate of such survivor, the intention being to create an indefeasible vested interest in such last survivor.

(b) Brainard, however, shall have the power and right (and Josephine hereby consents thereto), but only if both children of said marriage be living upon the death of the survivor of Brainard and Josephine, to appoint all or a part or parts of said Trust Estate to either one or both of said children as he may direct by his duly executed Last Will and Testament and subject to such conditions and restrictions as he may impose; all subject, however, to Josephine's life interest in the income of said Trust Estate."

By the second part of the amendment they added at the end of Article IX of the trust deed a new paragraph providing so far as material here, that a sucessor trustee, appointed in place of the New York Trust Co., might be an individual and not necessarily a bank or trust company.

The second amendment, dated April 9, 1937, stated that the New York Trust Co. was removed as sole trustee on March 18, 1937, and Emilie B. Bender was appointed and accepted as trustee on that date; that it was the desire of Brainard and Josephine and Bender, sole trustee, to amend the indenture and therefore pursuant to the power reserved in Article XI, they amended it. 1. By eliminating in its entirety Article III, "Loans

to Brainard and Josephine," 2. By eliminating from Article IV, the first three paragraphs thereof providing for three bank accounts in the New York Trust Co. including (1) Principal account and (2) Insurance Fund. This second amendment then stated under III thereof,—

"Whereas, at and prior to the settling of the trust deed of September 12, 1921, it was agreed that Josephine should give Brainard her general power of attorney to act as her attorney-in-fact, and agent, and on her behalf, in all matters in connection with the trust deed, including power of amendment, which said power of attorney was duly given by Josephine to Brainard and now remains in full force and unrevoked, said trust indenture is hereby amended as follows:

By inserting and instituting a new paragraph, viz: XII. Josephine's Power of Attorney to Brainard.

Josephine hereby ratifies her general power of attorney given to Brainard heretofore in 1921, and the parties hereto agree that all acts of whatsoever kind and nature done by Brainard as attorney-in-fact for Josephine shall have the same force and effect as though done by Josephine herself, including the power to amend the deed of trust, and Josephine hereby ratifies and approves all acts heretofore done by Brainard in her behalf in connection with said deed of trust of September 12, 1921."

This amendment then appointed Brainard as joint trustee with Emilie B. Bender to become effective May 1, 1937. The amendment was signed personally by Brainard and Josephine and also by Bender, sole trustee. Then followed an acceptance signed by Brainard of the appointment beginning May 1, as joint trustee.

On April 19, 1937, Brainard and Josephine personally signed a third amendment. It stated their intention to amend pursuant to the power reserved under Article XI. It then changed a sentence in paragraph (d) of Article X. It then stated, "Except as hereinbefore modified, said Indenture, as amended by instruments dated March 17, 1937 and April 9,

1937 and all its terms and provisions are hereby expressly approved."

 . A fourth amendment was executed on April 23, 1937. It stated that the deed of trust had been amended on March 17, April 9 and April 19, 1937; that Brainard and Bender had superseded former trustees, Brainard's appointment to date as of May 1, 1937; that it was the then intention and desire to amend the indenture and therefore pursuant to the power reserved by Article XI it was amended as follows;—It then eliminated all of the balance of Article IV, "bank accounts" as appeared in the original trust deed. It then substituted and inserted an entirely new Article IV as follows:—

"IV.   Distribution of Income.

After payment of all expenses incident to the administration of the trust, all balance of the income derived from the trust estate shall be disbursed by the trustees or trustee as follows:

(a) During the lifetime of Brainard and Josephine, this income shall be paid to their joint order, or deposited to their joint account, or as they shall direct the joint trustees; or, to Josephine alone, in whole or in part if Brainard shall so elect; or to Brainard alone, if Josephine shall so elect;

(b) If Brainard should survive Josephine, then to Brainard alone for his life: '

(c) If Josephine should survive Brainard, then

(1) To Josephine for her life, to the extent of two-thirds of the income, until she has received $4,000. a year;

(2) To Emilie B. Bender; for her life, to the extent of one-third of the income; until she shall have received $2,000. for a year;

(3) To Katharine A. Coggeshall, the sum of $1,000. for each year, after Josephine and Emile B. Bender shall have received $4,000. and $2,000. respectively;

(4) Thereafter, any and all income above $7,000. shall be divided between Josephine and Emilie B. Bender in the proportions of two-thirds to Josephine and one-third to Emilie B. Bender;

(5) The foregoing provision in favor of Emilie B. Bender shall include compensation for all services and commissions of all kinds in connection with this trust, to which she might be otherwise entitled as trustee, custodian or clerk:

(6) In the event of the marriage of Emilie B. Bender after Brainard's death, and before Josephine's death, Emilie's interest in the income shall automatically be reduced one-half, but part or all of said income thus forfeited by marriage may be restored to said Emilie B. Bender by the written consent of Josephine;

(7) In event Emilie B. Bender forfeits any of said income pursuant to the foregoing (whether one-half or some lesser sum, by agreement with Josephine) such income so forfeited by Emilie shall belong to and be paid to Josephine alone for her life, or during the married life of Emilie B. Bender, should that terminate prior to Josephine's decease'"

Number II of the amendment eliminated Article VII of the trust deed, as amended by paragraphs (a) and (b) of the amendment of March 17, 1937 and inserted and instituted in lieu thereof, the following;-

"VII. DISTRIBUTION OF TRUST ESTATE

[a] Upon the decease of the survivor of Brainard and Josephine, the principal of said trust estate shall, subject to the exercise of the power of appointment hereinbelow mentioned, be distributed as to two-thirds of the principal, share and share alike to the two of the three children of said marriage [Albert and Katharine] who are now living; if either one of said children [Albert or Katharine] be no longer living, then said trust estate shall be distributed to the sole survivor of said children;

[b] As to the remaining one-third of the principal of said trust estate, subject to the power of appointment hereinbelow mentioned, said one-third shall be distributed to Emilie B. Bender, or if she then be deceased, to the children or child of said marriage between Brainard and Josephine then living;

If Emilie B. Bender shall have married during the lifetime of Josephine or Brainard, and said marriage be in legal existence at that time, said Emilie B. Bender shall be entitled to receive only one-sixth of the principal of said trust estate, and the remaining one-sixth shall follow the distribution provided for in [a] hereof, except that if said Emilie B. Bender at the date of Josephine's death be legally separated from the husband, she shall be entitled to her full share of one-third;

[c] In the event of the decease of Emilie B. Bender prior to Brainard's or Josephine's decease, Emilie's interest in said trust fund, and the income thereof, shall entirely cease, and neither her next of kin, heirs-at-law, or personal representatives shall take any part or parcel of said trust estate, or the income thereof;

[d] However, Brainard shall have the power and right [and Josephine hereby consents thereto] to dispose of all or a part or parts of the principal of said trust estate by his last will and testament, as he may direct and appoint, and subject to such conditions and restrictions as he may impose."

This amendment then added a new paragraph to the trust deed which we quote;

"XIII. Appointment of Trustee in place of Brainard

[a] In event should Brainard resign or become incompetent or unable to perform his duties as joint trustee, a co-trustee shall be appointed by the concurrence of Brainard and Josephine, or in event Brainard is unable to act, by reason of ill health or incompetence, by the concurrence of Josephine and Emilie B. Bender;

[b] In event of Brainard's death, Josephine surviving, a co-trustee shall be appointed by the concurrence of Josephine, Emilie B. Bender and Katharine, but neither Albert G. Avery nor Reginald Coggeshall are eligible for appointment as co-trustees because of membership in the Avery family. A bank as co-trustee with Emilie B. Bender, or her successor, is recommended."

This fourth amendment was signed by Brainard personally and also by him in Josephine's name as her attorney-in-fact. It was also "accepted as a contract" by Emilie B. Bender.

On June 13, 1938 a fifth amendment was signed by Brainard and Josephine personally. It recited their desire to remove Brainard as a joint trustee and that acting under Article IX he was removed as such, "thereby leaving Emilie B. Bender as sole trustee of said trust under said trust indenture and amendments thereof."

On November 28, 1939 a sixth amendment was signed by Brainard and Josephine personally. Pursuant to the powers reserved to them in Article IX, they removed Emilie B. Bender as sole trustee and appointed Josephine as sole trustee of said trust, under said trust indenture and amendments thereof," to become effective November 29, 1939. This amendment also, in the event of the death of Josephine, the sole trustee, appointed Emilie B. Bender and Katharine A. Coggeshall joint trustees.

On December 30, 1946, a seventh amendment was executed by Brainard and Josephine personally, Brainard signing by his mark, which was witnessed by three witnesses. This amendment stated that the trust deed had been amended by "formal writings," executed "on March 17, 1937 * * * "on April 9, 1937" on April 19, 1937, on April 23, 1937, on June 13, 1938 and on November 28, 1939" and "pursuant to the power reserved in Article XI" it is amended. It then cancelled "completely paragraph [d] of Article VII, Distribution of Trust Estate of the amendment of April 23, 1937, as though it had not existed." It further stated, "Brainard hereby declares he has not used and does not intend to use the power of appointment, and hereby waives all his right and title to do so forever."

Since the death of Brainard, the income received by Joseph-

ine as trustee has been paid two-thirds to her and one-third to Bender. (Finding 24)

The controversy here stems from the effect of the fourth amendment, dated April 23, 1937. The plaintiff claims in his petition and pleadings that it is null and void as it is a revocation as to his rights and some of the defendants in the trust property. He also claims that the power of attorney from Josephine to Brainard did not authorize him to sign this fourth amendment for her. He asks (a) that the amendment be declared null and void; (b) upon the death of Josephine, that the trust be declared terminated and under mandate be distributed to him and his sister, Katharine, the defendant, share and share alike, or to the survivor of them, or if both have deceased, to the estate of the last survivor; (c) that the defendant, Bender, be enjoined from receiving any part of the principal upon the death of Josephine.

The defendants claim that the fourth amendment is not a revocation but only an amendment and the settlors had the right to make it under the reserved power to amend in the trust instrument; that Brainard under the power of attorney had authority to execute it for Josephine and that in any event she ratified it and that the amendment be declared valid and enforceable.

The parties pleaded the law of New York as pertinent to the foregoing questions and set forth certain New York cases and statutes in their pleadings. However, it was later agreed by counsel that if some or all questions of law are to be determined by the law of New York that the court should take judicial notice of the New York statutes and the New York decisions as officially reported, the same as Vermont statutes and decisions. The chancellor found that "the law of New York is controlling here rather than that of Vermont." No exception was taken to this finding.

Foreign law is a question of fact and must be proved as such. However, the court having been authorized to take judicial notice of the New York statutes and decisions, such proof was not necessary and it was not necessary for the court to find the law as a fact. The construction and effect of

the New York law was for the court and is now for this Court. See *General Motors Acceptance Corp.* v. *Silsby*, 108 Vt. 375, 379, 187 A 525.

The court by its decree declared; 1. That the instrument dated April 23, 1937 was an attempted ex parte revocation of the vested remainder created by Article VI, of the deed of trust dated September 12, 1921, made without the written consent of the plaintiff or his sister, Katharine Avery Hettinger, and is therefore void in all respects. 2. That the reservation of the powers to amend in the deed of trust is not sufficiently embracing or comprehensive to permit the naming of the defendant, Bender, a trust beneficiary as was done by the April 23, 1937 instrument. 3. That the power of attorney fron Josephine to Brainard, dated September 26, 1921, did not clothe Brainard with the authority to destroy or affect the vested interest of their children, the plaintiff and the defendant Katharine in the trust. 4. That the defendant, Emilie B. Bender has no interest in equity in the trust estate by virtue of the trust deed or any attempted changes or amendments thereof. Exceptions were allowed all parties.

These general exceptions to the decree raise the question whether it is warranted by the pleadings and supported by the findings of fact. *LaPlante* v. *Eastman*, 118 Vt 220, 228, 105 A2d 265.

We are first confronted by a question of procedure. This is governed by the law of the forum. *Bondi Brothers* v. *Holbrook Grocery Co.*, 96 Vt 160, 166, 118 A 486. The defendants, Bender, Hettinger, and Avery, trustee, filed a joint bill of exceptions. The same counsel represented these defendants. The plaintiff has filed in this Court a motion to dismiss the bill of exceptions. He bases his motion on three grounds;- (1) The defendant, Hettinger, is not injuriously affected or legally aggrieved by the decree. (2) The defendant, Josephine as trustee, has no legal interest in the trust remainder or its distributions so she is not injuriously affected or legally aggrieved by the decree. (3) Since the joint bill of exceptions is bad as to Katharine and the trustee it is also bad and unavailing to the defendant, Bender.

The procedure in this jurisdiction in regard to passing cases to this Court from the trial court including the court of

chancery is very simple. It requires a bill of exceptions signed by the presiding judge or chancellor. This bill of exceptions is the instrument by which questions of law raised below and to which exceptions have been preserved are passed to this Court for final decision. V. S. 47, §§1302, 2117, 2120, 2128 and numbers 57 & 58 of the Acts of 1949. It need be only what is called a skeleton bill of exceptions. *Cutler* v. *Jennings*, 99 Vt 85, 87, 130 A 583. Here these defendants were brought into court of chancery by the plaintiff. They are not in court of their own volition. They defended against the plaintiff. Certain findings, failure to find as requested and the decree were against them and their claims. The defendants Hettinger and Josephine, as trustee, have exceptions in addition to the ones in regard to the decree. The bill of exceptions, signed by the chancellor, states in substance that these defendants took and were allowed certain exceptions that appear in the record and that record is made a part of the bill. It is not a question on this motion in regard to the merit of the various exceptions, but whether or not they are properly before us for decision. We think they are. The defendants have complied with the statutes in regard to procedure.

The Vermont cases, except one, that the plaintiff cites in his brief beginning with *Hemenway* v. *Corey*, 16 Vt 225, have to do with appeals from probate court, generally to the county court. They are governed by a different statute than the ones here in question. These cases are not in point and do not support the plaintiff's position in grounds 1 and 2 of his motion. The case of *State* v. *Central Vermont Railway Co.*, 81 Vt 459, 71 A 193, 21 LRANS 949, also cited by the plaintiff is not in point. No appeal was involved in that case. It involved the right to bring a suit under a statute as "the party aggrieved." It is plain from the text on which the plaintiff relies from 4 CJS 353 and 2 Am Jur 943-944, that statutes which limit the right of appeal are the subject of the text. Neither those citations nor cases from other jurisdictions cited in support of the text are of help in connection with the procedure here in question. We must keep in mind that these defendants are not the moving parties to this litigation. By their bill of exceptions, they are presenting in this Court for final decision questions of law determined in the trial court

contrary to their position in that court. As the bill of exceptions is good as against grounds 1 and 2, it is good as against ground 3. The motion to dismiss the bill of exceptions is denied.

The defendants excepted to that part of finding 42 which reads as follows,- "viewing the trust instrument as a whole, the beneficiaries named and referred to in the deed of trust, and those within the contemplation of the settlors in the event power of appointment had been exercised by Brainard, it is this court's view, and so find, that the reservation to 'amend' is not sufficiently embracing or comprehensive to permit the subsequent naming of Emilie B. Bender as a beneficiary." Various grounds were given for the exception. They may be summarized as follows:- That it is a conclusion not supported by the facts found; that it is not a correct interpretation or construction of the trust deed and its amendments and is contrary to the law of New York; that the power to amend reserved in the original trust deed, together with the amendments, correctly interpreted and construed permitted the inclusion of Bender as a remainderman as this change was not within the limitation and restriction in regard to revocation; that Brainard under the power of attorney to him from Josephine had authority to make the amendment and that it was subsequently ratified by Josephine.

■ It is apparent that the foregoing finding is a conclusion of law, so it cannot stand if it is inconsistent with the findings upon which it is based. *Hackel, Trustee* v. *Burroughs*, 117 Vt 328, 331, 91 A2d 703.

We here reach the point where the New York law is controlling in construing the trust deed, its amendments, and the power of attorney as they are set forth in the findings, as that is the question raised by this exception.

Processes of construction may not be resorted to for the purpose of reading into a trust deed an intention not expressed or legitimately to be implied from the language used when construed in the light of all the surrounding circumstances. It is a trite saying that rules of construction are to be applied only to language of ambiguous meaning. *Central Union Trust Co.* v. *Trimble*, 255 NY 88, 94, 174 NE 72.

■ The power to revoke goes to the destruction of the trust only, the re-vesting of the property in the donor. It is the right to resume ownership. *Matter of Cochrane's Estate* 117 Misc. 18, 30, 190 NYS 895. See also *Baker* v. *Fifth Avenue Bank of NY*, 225 App. Div. 238, 232 NYS 238; *O' Hagan* v. *Kracke*, 165 Misc 4, 300 NYS 351, 361. It is an amendment when it does not have the effect, directly or indirectly, of revesting title in the settlors. *Petition of Tucker*, 70 NYS 2nd 626.

In *Faulkner* v. *Irving Trust Co.*, 231 App. Div. 87, 246 NYS 313, 314, the settlor created a trust with the income payable to him during his life and upon his death to his issue, if any, and if no issue to his sister or to her issue if she had deceased. He reserved the right to amend "in any manner whatsoever" but by its terms, the trust could not be revoked until he was 35 years old. Two years later, when he was 23 and he and his sister had no issue, he amended the trust instrument, without the consent of his sister, by changing the provision in regard to distribution and eliminiating the sister entirely, making it payable to his estate. The court there said, "The intention of the plaintiff as creator of the trust must prevail. The language of paragraph 'Seventh' of the agreement requires no construction other than its natural meaning and where plaintiff exercised thereunder his right to amend, his sister was divested of all beneficial interest." True, in that case, the settlor after he had amended went one step further and pursuant to §23 of the New York Personal Property Law, revoked the trust. The court held that he could do that. This right to revoke, however, was contingent upon the validity of the amendment eliminating the sister as a beneficiary.

In *St. George* v. *Fulton Trust Co.*, 273 App. Div. 516, 78 NYS 2d 298, a trust was created with the right to amend but not revoke. The income was payable to the settlor and his wife for life with remainder to his daughter, if living, if not to her issue. Later the settlor amended it by eliminating the issue of the daughter and making it payable, if she should have deceased, to the estate of the settlor. It was held that the amendment was proper, citing the Faulkner case, supra. See also *St. George* v. *Empire Trust Co.* 277 App. Div. 40, 97 NYS 2d 583.

In *Petition of Tucker*, *supra*, 70 NYS 2nd 626, the settlor created a trust with income payable to him for life and at his

death to be held for the benefit of his children living at the time of his death. The trust instrument could be amended but not revoked. The settlor amended it by eliminating the children. It was held that the amendment was proper and valid. The case of *Faulkner* v. *Irving Trust Co., supra,* was cited. See also, *Furchgott* v. *Hottinger,* 264 App. Div. 389, 35 NYS2d 579; *Mayer* v. *Bank of Manhattan,* 232 App. Div. 228, 229, 249 NYS 640, and *Matter of Woodward's Trust,* 284 App. Div. 459, 132 NYS 2d 266, in which the same principle has been recognized.

The plaintiff has cited many New York cases in his brief. Any attempt to specifically distinguish them would unduly lengthen this opinion. It is sufficient to say that an examination of them discloses that they are distinguishable, both factually and on matters of law, from the instant case. We mention, however, *Shoellkopf* v. *Marine Trust Co.,* 267 NY 358, 196 NE 288 particularly, as the plaintiff relies upon it heavily in his brief and also laid great stress upon it in oral argument. In that case, the trust instrument contained no right to revoke or amend. The settlor attempted to revoke and repossess the trust property. He tried to do this under a New York statute that provides for revocation with the written consent of all persons beneficially interested. He did not have the consent of certain children who had contingent interests and were thus beneficially interested. It was held that he could not revoke as he attempted to do. This case is distinguishable from the instant case and from *Faulkner* v. *Irving Trust Co., supra,* and the other New York cases that we have mentioned.

The plaintiff claims that the Faulkner case, supra, has been criticized. Whether it has been is beside the point.. For aught that he has shown, it is the law in New York and though only an appellate division case, it is thus conclusive on us here. *Capital Records* v. *Mercury Records Corp.,* 221 F2d 657, 665.

The plaintiff's entire theory is based upon the false premise that the fourth amendment was a revocation. It was not. The settlors did not, by that amendment, attempt to resume ownership of the trust property or repossess it as in *Schoellkopf* v. *Marine Trust Co., supra.* All that they did was to change the

possible channel into which some of the trust property might pass when the trust terminated. The channel, when the fourth amendment was made, had not and would not become definitely fixed until certain contingencies happened or did not happen. The rights of those beneficially interested were thus circumscribed and limited and subject to be divested. With the right to amend existing, as we have indicated, it is unnecessary to discuss the type of remainder or beneficial interest that the plaintiff had in the trust property.

█ It follows and we hold that the settlors had the right to make the fourth amendment. The exception that we have been considering to part of finding 42 is sustained.

The defendants also excepted to that part of finding 42 which reads as follows;- "It seems unlikely that at time power of attorney was executed by Josephine that it was within the contemplation of the settlors, particularly Josephine, that Brainard was thereby clothed with the authority to destroy or affect the vested interests of their children." The grounds of the exception may be summarized thus; 1. That it is neither a finding of fact nor conclusion of law. 2. There is nothing to support it in the pleadings, other findings or agreement of facts or in the law of New York. 3. That it is contrary to the interpretation placed upon the power of attorney by the settlors or manifested by the second amendment and the subsequent November 30, 1946 amendment and ratified by Josephine's conduct as sole trustee since Brainard's death.

█ It is plain that the quoted statement from finding 42 is neither a finding of fact nor a conclusion. It is merely conjecture or speculation. It states nothing positively. It leaves a doubt—an uncertainty. A statement that something is likely or unlikely does not establish a fact. A statement that the chancellor is in doubt as to a certain thing is no finding on that issue. *Raithel* v. *Hall*, 99 Vt 65, 72, 130 A 749. The statement has, therefore, no force and effect and may be disregarded.

However, the conclusion 3 in the decree that we have heretofore mentioned, holds that Brainard, by virtue of the power of attorney from Josephine, did not have authority to execute the fourth amendment. Whether or not this conclusion is war-

ranted is raised by the exception to the decree, so we consider it here.

The settlors in the second amendment, which was signed by Josephine personally, specifically mentioned the power of attorney, stating therein it was agreed at and prior to the date of the trust deed that Josephine should give Brainard her general power of attorney to act as "her attorney-in-fact, and agent, and in her behalf, in all matters in connection with the trust deed, including power of amendment, which said power of attorney was duly given***." They then amended the trust deed by adding a new paragraph which we have heretofore quoted in full. It need not be repeated. It related entirely to the power of attorney. It mentioned "the power to amend." The plaintiff claims that this amendment applies only to acts previously done by Brainard as attorney for Josephine in amending the trust deed. That can not be so, for he had not prior to that time acted for her in amending it.

The extent to which a principal shall authorize his agent is completely within his determination. *Porges* v. *U. S. Mortgage & Trust Co.*, 203 N. Y. 181, 188, 96 NE 424. Powers may be created for any lawful purpose, by any language which indicates an intention to bestow them, and to do any act which the grantor might himself lawfully perform. *Reynolds* v. *Denslow*, 80 Hun. 359, 30 NYS 77. The right of election to take against the will, is a personal right in the widow, but the election may be made by a power of attorney. Matter of Zalewski's Estate 292 NY 332, 55 NE2d 184, 157 ALR 87.

It is clear and we hold that under the power of attorney from Josephine to Brainard, together with the second amendment, he had authority as her attorney-in-fact to execute the fourth amendment on her behalf. There is error in the decree in that regard.

If there could be any doubt about the authority of Brainard in that regard, it is resolved against the plaintiff by the conduct of Josephine and her acts since the time of the fourth amendment. Ratification is based upon assent which may be either express or implied. If the principal adopts the acts of the agent, it is the same as if he had originally conferred authority upon the agent. *Ramsey* v. *Miller*, 202 NY 72, 95 NE 35.

The fifth amendment removed Brainard as trustee and it is stated therein over Josephine's personal signature, "thereby leaving Emilie B. Bender as sole trustee of said trust indenture and amendments thereof." Again, in the sixth amendment, over Josephine's personal signature, Bender was removed as trustee and Josephine was appointed "as sole trustee of said trust, under said trust indenture and amendments thereof." Again, in the seventh amendment, dated December 30, 1946, signed by Josephine personally, it was stated that the trust deed had been amended by formal writings, giving the dates of each amendment, including April 23, 1937, the date of the fourth amendment. This seventh amendment then amended the fourth amendment by cancelling one paragraph of the new Article VII that was established by the fourth amendment. Certainly that, by implication, put Josephine's stamp of approval on, as well as her recognization of, the fourth amendment.

Furthermore, this fourth amendment provided in connection with the distribution of income that, if Josephine should survive Brainard, Emilie B. Bender should receive one-third of the income until she had received $2,000. and one third of all the income above $7,000. Finding 24 states that Josephine as trustee, since the death of Brainard, has paid one-third of the income to Bender. She has, therefore, as trustee, administered the trust in accordance with the fourth amendment, even to the extent of diminishing her income from the trust as, without the fourth amendment, she would be entitled to all the income since the decease of Brainard.

The conclusion is inevitable that Josephine has by her own conduct and acts recognized, ratified and confirmed, if such was necessary, the fourth amendment.

It appears from what we have said, eliminating the conclusion in finding 42 to which we have sustained the exception, that the declaratory decree is not warranted by the pleadings and supported by the findings to which no exceptions were taken. The cause must be remanded for a new decree in accordance with the views expressed in this opinion. It becomes unnecessary to consider the other exceptions of the defendants to the findings or to the failure to find. This disposes of the issues raised in the main case as counsel have denominated it.

There are further and supplemental matters that must be considered. The defendant Josephine, as trustee, filed a petition with the chancellor asking for an order allowing her attorney's fees and expenses. The plaintiff subsequently filed a petition asking for an order allowing his attorney's fees and expenses. The chancellor made an order allowing the fees and expenses of the attorneys for Josephine as trustee to be paid out of the corpus of the trust and denied the petition of the plaintiff. Exceptions were allowed the plaintiff to the order on both petitions. These exceptions are before us on bills of exceptions of the plaintiff filed separately to each order.

At the hearing before the chancellor on these petitions, the plaintiff conceded that the sum of $3,000. for services and $301.47 for expenses was a reasonable charge for the attorneys for Josephine as trustee. He denied the legal right and propriety of the chancellor to order payment thereof out of the trust estate. The attorneys for the defendants conceded that the sum of $3,000. for services and $50. for expenses was a reasonable charge for the attorney for the plaintiff. The chancellor in his order found that the sum of $3,301.47 was reasonable and authorized its payment out of the principal of the trust estate.

The plaintiff raises the question that the chancellor made no findings of fact on these petitions. In view of the concession as to the amount of the charge for services and expenses and the reasonableness thereof, we see no reason for any findings to support the orders. Those in the main case had already been made. They disclosed all the facts in connection with the trust, the relationship of the parties to each other and to the trust and their status in connection therewith.

The whole basis of the plaintiff's claim on his petition is that his action in having the fourth amendment vacated has resulted in benefitting not only himself, but all the other parties except Bender, thus benefitting the trust by recovering for the beneficiaries the one-third that the fourth amendment provided for Bender upon distribution of the trust estate. One answer to that is that the one-third to Bender under the fourth amendment is contingent upon her surviving both Brainard and Josephine. This has not yet come to pass. But the com-

plete answer is that under this opinion, the plaintiff has not ultimately prevailed in vacating the fourth amendment. *Strout v. Strout*, 117 Me 357, 104 A 577. This fourth amendment was made in 1937. The plaintiff's father, Brainard, did not decease until 1947 and the plaintiff waited that ten years and until 1954 before bringing his petition to have the fourth amendment declared void. His petition for attorney's fees and expenses which under the chancellor's order is made a part of the record before us, shows that the plaintiff is a member of the New York Bar of 25 years standing. He has participated on the briefs in the main case as "of counsel." The findings in the main case show that Katharine, the plaintiff's sister and one of the beneficiaries, refused to join him as a party plaintiff. His bills of exceptions to the orders we are now discussing show that exhibits admitted without objection at the hearing before the chancellor on the petitions that are the subject of the orders disclose that both Katharine and Josephine protested to the plaintiff and tried to prevail upon him not to start the proceedings in this cause. In other words he brought them on his own and without sanction and against their wishes and desires.

In connection with the petition of Josephine as trustee and the plaintiff's exception to the order thereunder, the plaintiff's petition to have the fourth amendment declared null and void put in issue the validity of part of the trust as it was being administered by Josephine as sole trustee. It involved her actions as trustee in administering the trust under that amendment. She, therefore, had the right to contest the petition and employ counsel for that purpose. She had an active duty to participate. *Hershatter* v. *Colonial Trust Co.*, 136 Conn. 588, 73 A2d 97, 101. This being so, there is no basis for the claim that the attorneys for Josephine as trustee should be denied compensation because they were representing parties who had adverse interests. Whatever their reason, each of the defendants had a legitimate right to dispute and contest the claims of the plaintiff as set forth in his petition and the questions involved in that connection.

There is no error in the order of the chancellor denying the petition of the plaintiff for an order for the allowance of at-

torney's fees and expenses and in the order allowing the payment of attorney's fees and expenses for the defendant, Josephine as trustee, from the principal of the trust estate.

*The declaratory decree of the chancellor is reversed. The orders in regard to the payment of attorney's fees and expenses are affirmed. The cause is remanded. Let a new declaratory decree be drawn and entered in accordance with the views expressed in this opinion. Let the defendants recover their costs.*